### BOSTOCK vs. THE STATE OF GEORGIA.

1. While the indictment is loosely drawn and might have been bad on special demurrer, the objections are not such as to be good in arrest of judgment.

2. Blanks being left, which were filled by the solicitor-general in pencil, but the insertions erased by order of court after the jury had been impaneled and before evidence was submitted, the solicitor stating that they were not made as alterations but as guides to himself, a motion in arrest based on the ground of alterations in the indictment was properly overruled.

3. Defendant being charged with murder in causing deceased to fall or leap from a portico, it was error in the court to inquire of defendant's counsel whether he objected to the jury's examining the premises, and upon receiving a negative answer, sending them in charge of a bailiff to look at the scene of the alleged homicide.

4. Whether or not the counts of an indictment are sufficient, is for the decision of the court, and not of the jury.

5. It was error for the court to charge concerning a state of facts in respect to which there was no evidence.

Criminal law. Practice in the Superior Court. Charge of Court. Motion in arrest of judgment. Before Judge TOMPKINS. Chatham Superior Court. October Term, 1877.

Reported in the decision.

A. P. & S. B. ADAMS; P. M. & R. W. RUSSELL, for plaintiff in error, cited as follows: On alteration of indictment, 1 Bish. Cr. Proc., §389 ; Code, §3916. On indictment, 1 Bish. Cr. Proc., §277 ; 2 Whar. Am. Cr. L., §§961, 1059 ; 1 *Ib.*, §629 ; 1 Car. & Mars., 284 ; 1 Russ. on Cr., 676 ; 1 Arch. Cr. Pl. & Pr., 790, 265, note 1 ; 50 *Ga.*, 593. Inspection

of premises, 1 Bish. Cr. Proc., §§827, 686 ; 10 *Ga.*, 524 ; 11
*Ib.*, 338 ; 12 *Ib.*, 29 ; 51 *Ib.*, 567.

A. B. SMITH, solicitor-general, for the state, cited on in-
dictment and charge, 2 Arch. Cr. Pl. & Pr., 207 ; Ry. & M.
C. C., 97 ; 1 T. R., 177.

WARNER, Chief Justice.

The defendant was indicted for the offense of murder,
and on his trial therefor was found guilty of voluntary
manslaughter. A motion was made in arrest of judg-
ment on the grounds therein stated, amongst which are,
" that the allegations in the indictment do not either in the
first or second counts thereof, set forth or specify any offense
with which defendant is charged." And because "of the
alteration of the second count after indictment found, and
because both of the counts are fatally defective."

A motion was also made for a new trial on various grounds,
both of which motions were overruled, and the defendant
excepted. The following is a copy of the indictment :

"GEORGIA, CHATHAM COUNTY.

" The grand jurors, selected, chosen and sworn for the county of
Chatham, to-wit. (here the names of the grand jurors are set out) in
the name and behalf of the citizens of Georgia, charge and accuse
Thomas Bostock, of the county and state aforesaid, with the offense of
murder; for that the said Thomas Bostock, in the county of Chatham
and state aforesaid, on the seventeenth day of August, in the year of
our Lord one thousand eight hundred and seventy-seven, with force
and arms, in and upon one Catherine Bostock, in the peace of God and
said state, feloniously, wilfully and with malice aforethought did make
an assault; and that the said Thomas Bostock, being then and there the
husband of her, the said Catherine Bostock, did then and there, in a
violent and threatening manner, and by threats, menaces and abusive
language, then and there used to, of, and in the presence and hearing
of her, the said Catherine Bostock, did so operate on her fears as to
induce her to believe that the said Thomas Bostock thereby intended
to do her some great bodily harm, and that by means of the language,
acts and disposition of the said Thomas Bostock, so as aforesaid mani-
fested, that her personal liberty was in great peril and her life greatly
endangered, and acting under the influence of her fears, so as aforesaid

brought about by the unlawful, wilful and malicious conduct of the said Thomas Bostock, she, the said Catherine Bostock, being at that time in an upper story of a certain house in said county, at that time occupied by the said Thomas and Catherine Bostock, she, the said Catherine Bostock, in her endeavor to escape from the vengeance, wrath and violence of him, the said Thomas Bostock, so as aforesaid manifested, and having been and at that time being greatly terrified, and being in fear that her life was endangered, so as aforesaid feloniously, wilfully and with malice aforethought, manifested by the said Thomas Bostock, did, from a certain portico attached to said house, fall to the ground, and did thereby receive certain mortal wounds and bruises, of which said mortal wounds and bruises the said Catherine Bostock afterwards, to-wit: in the county and state aforesaid, and on the eighteenth day of August, in the year of our Lord one thousand eight hundred and seventy-seven, died.

"And so the jurors aforesaid, on their oaths aforesaid, do say that he, the said Thomas Bostock, her, the said Catherine Bostock, in manner and form aforesaid, feloniously, wilfully and with malice aforethought, did kill and murder, contrary to the laws of said state, the good order, peace and dignity thereof.

"And the jurors aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse the said Thomas Bostock with having committed the offense of murder.

"For that the said Thomas Bostock, in the county of Chatham and state of Georgia aforesaid, on the seventeenth day of August, in the year of our Lord one thousand eight hundred and seventy-seven, and upon one Catherine Bostock, in the peace of God and said state, feloniously, wilfully and with malice aforethought did make an assault.

"And that he, the said Thomas Bostock, did wilfully, feloniously and with malice aforethought, then and there use to, of, and in the presence of one Catherine Bostock, certain violent and abusive language, and with threats and menaces did thereby greatly excite the fears of her, the said Catherine Bostock, and did thereby induce her to believe that her personal liberty and life were greatly endangered, and she having well-grounded reasons to believe, and believing, that the said Thomas Bostock, feloniously, wilfully and with malice aforethought, meditated the destruction of her life, she then being in an upper story of a certain house in said county, then occupied by the said Thomas and Catherine Bostock, to escape the threatened violence of the said Thomas Bostock towards her person and life, endeavored to escape from him, and being on the top of a certain portico attached to and a part of said house, and whilst on the outer edge of said ———— was wilfully and feloniously, and with malice aforethought, approached by the said Thomas Bostock, and he not having the fear of God before his eyes and being instigated by the devil, did then and there wilfully, feloniously and with malice aforethought, seize, shove and throw said

Catherine Bostock from said ———, so as aforesaid attached to said house, with great violence to the ground, and that she, the said Catherine Bostock, by reason of said fall, did then and there, in manner and form aforesaid, receive certain mortal wounds and bruises, from which said mortal wounds and bruises the said Catherine Bostock, from the day aforesaid, did languish, and languishing did live until the eighteenth day of August, in the year of our Lord one thousand eight hundred and seventy-seven, on which last mentioned day the said Catherine Bostock, in the county of Chatham and state of Georgia aforesaid, of the mortal wounds and bruises aforesaid, died.

"And so the jurors aforesaid, on their oaths aforesaid, do say that he, the said Thomas Bostock, in manner and form aforesaid, her, the said Catherine Bostock, did then and there, feloniously, wilfully and with malice aforethought, kill and murder.

"Contrary to the laws of said state, the good order, peace and dignity thereof."

When the solicitor-general read this indictment to the prisoner, he filled up the two blank places apparent in the the indictment with the word portico. After the jury had been impaneled, prisoner's counsel arose and stated in his place that it had just been discovered by the defense, that the indictment had been altered in its second count since it left the grand jury room, by the insertion of the word "portico" in the two blank places. This insertion was written in lead pencil, the rest of the indictment being in ink; it was not interpolated, but written in the blank space where there was plenty of room. The solicitor-general admitted that he had written the word in the two places mentioned since the grand jury had passed upon the case, but for the purpose of his guidance, and with no intention of altering the indictment. Whereupon the prisoner moved to strike the second count because of the insertion of the word in the two places, and thereby altering the indictment after it had left the grand jury room. The court refused the motion, but ordered that the word be erased in both places, which was done, and the prisoner excepted. This motion was made before evidence was submitted.

1, 2. There was no error in overruling the defendant's motion in arrest of judgment. The indictment is loosely

drawn, especially the first count thereof, and might have been held bad on special ·demurrer thereto before trial, as required by the 4629th section of the. Code, but the objection was not good in arrest of judgment as declared by that section. It appeared from the statement of the solicitor-general that there was no intention to alter the second count of the indictment, and the defendant was tried upon it as it came from the grand jury.

3. It also appears from the record and bill of exceptions, that during the progress of the trial, the court asked the counsel for defendant, in the presence of the jury, if he objected to the jury examining the premises by going to the house, who replied that he did not. Whereupon the court sent the jury to the house where the defendant lived at the time the alleged offense was committed, to examine the same, in the custody of two officers of the court, but neither the court nor the defendant was present when this part of the trial was had in and about the defendant's house. This extraordinary proceeding on the part of the court was error. The court had no legal right to require the defendant's counsel to say whether he objected to that extraordinary proceeding or not, especially in the presence of the jury, and the fact that he did not object under the circumstances did not legalize that extraordinary proceeding.

4. It further appears from the record, that the court in its charge· to the jury, after reading the first and second counts in the indictment, said to them, "the second count is not as full as it might have been made, but in this case the jury can look to the whole indictment and see if it complies with the rule stated in section 4628 of the Code, and read that section. If the jury find that the second count does not so plainly state the case that the nature of the offense charged can be easily understood by the jury, then you should discard such count from your consideration, and make no finding upon it." This charge of the court was error. The jury were not the judges of the sufficiency of the indictment; that was a question for the court to decide,

and should not have been submitted to the jury for their consideration and decision.

5. It also appears that the court charged the jury "you have the right also to consider the dying declarations of Catherine Bostock, if any have been proven to you. These are permitted under section 3781 of the Code." The court here read that section of the Code to the jury. This charge of the court was error, inasmuch as there was no evidence of any dying declarations having been made by Catherine Bostock, but on the contrary an attempt was made to prove such declarations and failed, as is shown by the record. The evidence in this case is not such as to have *required* the verdict, notwithstanding the errors committed by the court on the trial thereof, and therefore the judgment of the court below is reversed and a new trial ordered.

Judgment reversed.